UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE CASTILLO, MODESTO PEREZ, RAMIRO LOPEZ,
AMANDO MENDEZ MARTINEZ, HUMBERTO OTILICA,
CATERINO de LOS SANTOS, HUMBERTO BADILLO
MORALES, ALEJANDRO OTILICA LUNA, ERICK
MENDEZ, JORGE ROSAS, and MARTINEZ MENDEZ,
on behalf of themselves and all others similarly situated,

                *Plaintiffs,*

       -against-

SPICE PLACE, INC., SPICE AVE., INC.,
BANGKOK PALACE II, INC., SPICE CITY, INC.,
SPICE WEST, INC., KITLEN MANAGEMENT,
INC., KITLEN, INC., JUTTANA RIMREARTWATE,
THANADHAM THANEESAENGSIRI, PHAKPHOOM
SIRISUWAT, KEVIN LEATHERS, KITTIGRON
LIRTPANARUK, YONGYUT LIMLEARTVATE, and
YUANYONG RIMREARTWATE,

                *Defendants.*
------------------------------------------------------------------X

08 CV

COMPLAINT

FLSA Collective Action

Rule 23 Class Action

ECF Case

Plaintiffs Request Trial by Jury

Judge

Plaintiffs allege that:

### FIRST CLAIM
(violation of the overtime provisions of the FLSA)
(on behalf of all plaintiffs except Alejandro Otilica Luna)

1.     Upon information and belief, defendants jointly operate the defendant corporations, Spice Place, Inc., Spice Ave, Inc., Bangkok Palace II, Inc., Spice City, Inc., Spice West, Inc., Kitlen Management, Inc, and Kitlen, Inc. (collectively, the "Spice group").

2.     The Spice group owns and operates a chain of Thai restaurants in New York City.

3.     Plaintiffs are former employees of the Spice group.

4. This Court has subject matter jurisdiction pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), 28 U.S.C. § 1337, and 28 U.S.C. § 1331; this Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district, plaintiffs were employed by defendants in this district, and defendants reside or are doing business in this district.

6. Plaintiff Jose Castillo ("Castillo") is a resident of Queens County, New York.

7. Castillo has worked as a delivery person at the Spice group restaurant location at 1411 Second Avenue in Manhattan since approximately January 2002.

8. Plaintiff Humberto Badillo Morales ("Morales") is a resident of Queens County, New York.

9. Morales worked as a delivery person at the Spice group restaurant location at 1411 Second Avenue in Manhattan from approximately 2002 until approximately March 2005.

10. Plaintiff Caterino de los Santos ("de los Santos") is a resident of Queens County, New York.

11. De los Santos worked as a delivery person at the Spice group restaurant location at 1411 Second Avenue in Manhattan from approximately May 2001 until approximately November 2004.

12. Plaintiff Jorge Rosas ("Rosas") is a resident of Bronx County, New York.

13. Rosas works as a delivery person at several Spice group restaurant locations, and has worked for the Spice group since approximately early 2004.

14. Plaintiff Humberto Otilica ("Otilica") is a resident of Queens County, New York.

2

15. Otilica worked as a delivery person at the Spice group restaurant location at 1411 Second Avenue in Manhattan from approximately November 2001 until approximately July 2004.

16. Plaintiff Modesto Perez ("Perez") is a resident of New York County, New York.

17. Perez worked as a delivery person for several Spice group restaurants from approximately September 2005 until approximately May 2006.

18. Plaintiff Ramiro Lopez ("Lopez") is a resident of Queens County, New York.

19. Lopez has worked as a delivery person and dishwasher for several Spice group restaurants since approximately April 2003.

20. Plaintiff Erick Mendez ("E. Mendez") is a resident of Queens County, New York.

21. E. Mendez worked as a busboy and delivery person at several Spice group restaurant locations from approximately July 2003 until approximately October 2003, and from approximately January 2006 until approximately March 2006.

22. Plaintiff Amando Martinez Mendez ("A. Mendez") is a resident of Queens County, New York.

23. Martinez worked as a dishwasher and delivery person at several Spice group restaurant locations from approximately November 2001 until approximately early 2004.

24. Plaintiff Martinez Mendez ("M. Mendez") is a resident of Queens County, New York.

25. M. Mendez worked as a delivery person at several Spice group restaurant locations from approximately June 2003 until approximately December 2004.

26. Upon information and belief, Bangkok Palace II, Inc. is a domestic corporation organized and existing under the laws of the State of New York.

27. Upon information and belief, Kitlen Management, Inc. is a domestic corporation organized and existing under the laws of the State of New York.

28. Upon information and belief, Bangkok Palace II, Inc. and Kitlen Management, Inc. maintain their corporate headquarters and operate a restaurant known as "Spice Uptown" at 1411 Second Avenue, New York, New York 10021.

29. Upon information and belief, Spice Place, Inc. is a domestic corporation organized and existing under the laws of the State of New York.

30. Upon information and belief, Spice Place, Inc. maintains its corporate headquarters and operates a restaurant known as "Spice University" at 60 University Place, New York, New York, 10003.

31. Upon information and belief, Spice City, Inc. is a domestic corporation company organized and existing under the laws of the State of New York.

32. Upon information and belief, Spice City, Inc. maintains its corporate headquarters and operates a restaurant known as "SEAWilliamsburg" at 114 N. 6th Street, Brooklyn, New York 11211.

33. Upon information and belief, Spice West, Inc. is a domestic corporation company organized and existing under the laws of the State of New York.

34. Upon information and belief, Spice West, Inc. maintains its corporate headquarters and operates a restaurant known as "Peep Soho" at 177 Prince Street, New York, New York 10012.

35. Upon information and belief, Spice Avenue, Inc. is a domestic corporation organized and existing under the laws of the State of New York.

36. Upon information and belief, Spice Avenue, Inc. maintains its corporate headquarters at 44-32 65th Street, Woodside, New York 11377, and operates a restaurant known as "Spice Chelsea" at 199 8th Avenue, New York, New York 10003.

37. Upon information and belief, Kitlen, Inc. is an inactive domestic corporation organized under the laws of the State of New York.

38. Upon information and belief, Kitlen, Inc. maintained its corporate headquarters and operated a restaurant known as "SEA" at 75 Second Avenue, New York, NY 10003.

39. Upon information and belief, Kittigron Lirtpanaruk ("Lirtpanaruk") is an individual engaged in business with the Spice group in New York City.

40. Lirtpanaruk is sued individually and in his capacity as an owner, officer or agent of a corporation or corporations in the Spice group.

41. Upon information and belief, Yongyut Limleartvate ("Limleartvate") is an individual engaged in business with the Spice group in New York City.

42. Limleartvate is sued individually and in his capacity as an owner, officer or agent of a corporation or corporations in the Spice group.

43. Upon information and belief, Juttana Rimreartwate ("J. Rimreartwate") is an individual engaged in business with the Spice group in New York City.

44. J. Rimreartwate is sued individually and in his capacity as an owner, officer or agent of a corporation or corporations in the Spice group.

45. Upon information and belief, Thanadham Thaneesaengsiri ("Thaneesaengsiri") is an individual engaged in business with the Spice group in New York City.

46. Thaneesaengsiri is sued individually and in his capacity as an owner, officer or agent of a corporation or corporations in the Spice group.

47. Upon information and belief, Phakphoom Sirisuwat ("Sirisuwat") is an individual engaged in business with the Spice group in New York City.

48. Vajirabanjong is sued individually and in his capacity as an owner, officer or agent of a corporation or corporations in the Spice group.

49. Upon information and belief, Kevin Leathers ("Leathers") is an individual engaged in business with the Spice group in New York City.

50. Leathers is sued individually and in his capacity as an owner, officer or agent of a corporation or corporations in the Spice group.

51. Upon information and belief, Yuanyong Rimreartwate ("Y. Rimreartwate") is an individual engaged in business with the Spice group in New York City.

52. Y. Rimreartwate is sued individually and in his capacity as an owner, officer or agent of a corporation or corporations in the Spice group.

53. At all relevant times, one or more of defendants employed or jointly employed one or more plaintiffs.

54. The gross annual volume of sales made or business done by the Spice group, for each year in existence, was at least $500,000 (exclusive of excise taxes at the retail level that are separately stated.)

### Plaintiffs' employment experiences with the Spice group

55. Plaintiffs worked between approximately 77 and 91 hours each week of their respective employment periods with the Spice group, but never received proper overtime pay of one and one-half times their regular pay rates for any hours plaintiffs worked beyond 40 per week.

56. Plaintiffs earned salaries from $100 to $180 per week as Spice group delivery personnel, equating to hourly rates of pay of around $2.

57. Plaintiffs received tips from customers, but were not informed that the tips would be counted toward their weekly salaries, defendants did not keep a record of the amount of tips plaintiffs received, and managers of the Spice group restaurants often kept large portions of plaintiffs' tips.

58. Defendants did not give plaintiffs meal breaks, and plaintiffs could only eat if they had some free time between deliveries.

59. Defendants issued paychecks to plaintiffs under false social security numbers arbitrarily selected by defendants.

60. If an individual plaintiff worked at more than one Spice group restaurant location during a single week, defendants issued two checks indicating two different social security numbers (both of which were invented by defendants) to that individual plaintiff.

61. After January 2006, when the State of New York Office of the Attorney General initiated an audit of the Spice group's employment and compensation practices, plaintiffs were required to work at two different Spice group restaurant locations if they worked more than 40 hours in a week.

62. Plaintiffs would then be issued two separate paychecks, under two separate social security numbers, from each Spice group restaurant location, and the total number of hours worked indicated on each paycheck did not exceed 40.

63. Plaintiffs kept track of the number of hours they worked with "punch cards" or by entering their individual "code" into a computer.

64. On numerous occasions, Spice group restaurant managers or chefs instructed plaintiffs to continue working, but to "clock-out" by entering their respective codes into the computer or punch their "punch cards" well before they were finished working.

65. Defendants employed plaintiffs as delivery personnel, but required plaintiffs to perform other duties in addition to deliveries, including food preparation, stocking the storage rooms, and cleaning and preparing the restaurants for patrons.

### FLSA collective action allegations

66. Plaintiffs bring their FLSA overtime and liquidated damages claims as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who are or were employed by the Spice group as delivery personnel, on or after the date that is three years before the filing of the complaint in this case ("FLSA class").

67. At all relevant times, plaintiffs and other members of the FLSA class have had substantially similar job requirements and pay provisions, and have been subject to the Spice group's common practices, policies, programs, procedures, protocols, and plans of willfully failing and refusing to pay them at a rate of one and one-half times their regular rates for hours worked in excess of 40 hours per week.

68. The claims of plaintiffs stated herein are similar to those claims of the other members of the FLSA class.

69. Members of the FLSA class are readily identifiable and locatable through defendants' records.

70. Members of the FLSA class should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), and unless this Court promptly issues such notice, FLSA class members who have been unlawfully deprived of overtime wages in violation of the FLSA

will be unable to secure compensation to which they are entitled and which defendants unlawfully withheld.

71. The Spice group is an "employer" under the FLSA because the individual employees that comprise the Spice group are corporations that employ individuals in an occupation, business, or service, namely in the restaurant industry.

72. J. Rimreartwate, Thaneesaengsiri, Vajirabanjong, Leathers, Lirtpanaruk, Limleartvate, and Y. Rimreartwate (collectively, the "individual defendants") are plaintiffs' and the FLSA class members' "employer[s]" under the FLSA, and are individually liable because, individually or collectively, they controlled the Spice group, had the power to hire and fire employees, to supervise and control the conditions of employment, and to determine employees' rates and methods of payment.

73. To arrive at the regular hourly rate of pay when an employer pays a salary, as the Spice group does here, the employer must divide the amount of an employee's paycheck by the number of hours the employee actually worked during the period of time covered by the paycheck.

74. The resulting regular rate of pay then must be multiplied by 1.5 to arrive at an employee's overtime rate of pay.

75. The Spice group intentionally failed to pay plaintiffs and the FLSA class members overtime rates of one and one-half times the regular scheduled rate for each hour worked over 40 in a workweek, in violation of 29 U.S.C. § 207(a)(1).

76. The Spice group's failure to pay plaintiffs and the FLSA class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

77. By reason of the foregoing, plaintiffs are entitled to relief as follows:

a. Castillo: approximately $54,846.00 of unpaid overtime premiums and unpaid overtime wages, and $54,846.00 of liquidated damages for total damages of approximately $109,692.00, plus interest;

b. Perez: approximately $15,687.00 of unpaid overtime premiums and unpaid overtime wages, and $15,687.00 of liquidated damages for total damages of approximately $31,374.00, plus interest;

c. Lopez: approximately $24,950.00 of unpaid overtime premiums and unpaid overtime wages, and $24,950.00 of liquidated damages for total damages of approximately $49,900.00, plus interest;

d. Otilica: approximately $1,352.00 of unpaid overtime premiums and unpaid overtime wages, and $1,352.00 of liquidated damages for total damages of approximately $2,704.00, plus interest;

e. De los Santos: approximately $1,880.00 of unpaid overtime premiums and unpaid overtime wages, and $1,880.00 of liquidated damages for total damages of approximately $3,760.00, plus interest;

f. Morales: approximately $10,110.00 of unpaid overtime premiums and unpaid overtime wages, and $10,110.00 of liquidated damages for total damages of approximately $20,220.00, plus interest;

g. E. Mendez: approximately $3,172.00 of unpaid overtime premiums and unpaid overtime wages, and $3,172.00 of liquidated damages for total damages of approximately $6,344.00, plus interest;

h. Rosas: approximately $35,068.00 of unpaid overtime premiums and unpaid overtime wages, and $35,068.00 of liquidated damages for total damages of approximately $70,136.00, plus interest;

i. M. Mendez: approximately $5,016.00 of unpaid overtime premiums and unpaid overtime wages, and $5,016.00 of liquidated damages for total damages of approximately $10,032.00, plus interest;

j. The costs of this litigation, including attorney's fees; and

k. Such other and further relief as this Court deems just and equitable.

78. Each of the other FLSA class members has been damaged in an amount to be determined at trial.

## SECOND CLAIM
(violation of FLSA minimum wage provisions)

**(on behalf of all plaintiffs except Alejandro Otilica Luna)**

79. Plaintiffs repeat and re-allege paragraphs 1 through 78 as though fully set forth herein.

80. Plaintiffs sue on their own behalf and on behalf of the FLSA class.

81. Defendants intentionally failed to pay plaintiffs and FLSA class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

82. Defendants failure to pay plaintiffs and the FLSA class members the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a),

83. By reason of the foregoing, plaintiffs are entitled to relief as follows:

   a. Castillo: approximately $31,075.00 of unpaid minimum wages, and $31,075.00 of liquidated damages for total damages of approximately $62,150.00, plus interest;

   b. Perez: approximately $8,016.00 of unpaid minimum wages, and $8,016.00 of liquidated damages for total damages of approximately $16,032.00, plus interest;

   c. Lopez: approximately $22,790.00 of unpaid minimum wages, and $22,790.00 of liquidated damages for total damages of approximately $45,580.00, plus interest;

   d. Otilica: approximately $805.00 of unpaid minimum wages, and $805.00 of liquidated damages for total damages of approximately $1,610.00, plus interest;

   e. De los Santos: approximately $1,105.00 of unpaid minimum wages, and $1,105.00 of liquidated damages for total damages of approximately $2,210.00, plus interest;

   f. Morales: approximately $5,992.00 of unpaid minimum wages, and $5,992.00 of liquidated damages for total damages of approximately $11,984.00, plus interest;

   g. E. Mendez: approximately $2,210.00 of unpaid minimum wages, and $2,210.00 of liquidated damages for total damages of approximately $4,420.00, plus interest;

   h. Rosas: approximately $31,895.00 of unpaid minimum wages, and $31,895.00 of liquidated damages for total damages of approximately $63,790.00, plus interest;

    i.    M. Mendez: approximately $3,180.00 of unpaid minimum wages, and $3,180.00 of liquidated damages for total damages of approximately $6,360.00, plus interest;

    j.    The costs of this litigation, including attorney's fees; and

    k.    Such other and further relief as this Court deems just and equitable.

84.    Each of the other FLSA class members has been damaged in an amount to be determined at trial.

## THIRD CLAIM
### (violation of New York Labor Law overtime wage provisions)
### (on behalf of all plaintiffs except Alejandro Otilica Luna)

85.    Plaintiffs repeat and re-allege paragraphs 1 through 65 above as though fully set forth herein.

86.    Plaintiffs sue on their own behalf and on the behalf of a class of persons similarly situated under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure ("FRCP").

87.    Plaintiffs bring the New York Labor Law ("NYLL") § 190, *et seq.* overtime claims on their own behalf and on behalf of all persons who are or were employed by the Spice group and the individual defendants in New York State, on or after the date that is six years before the filing of the complaint in this action, to entry of judgment in this action (the "NYLL class").

88.    Defendants violated NYLL § 190 *et seq.* by willfully failing to pay plaintiffs and the putative NYLL class members overtime compensation at a rate of one and one-half times the respective employee's regular scheduled rate of pay for each hour worked in excess of 40 hours in a single workweek and for hours worked on legal holidays.

89.    Defendants failure to pay plaintiffs overtime compensation was willful within the meaning of NYLL § 663.

90. At all relevant times, defendants were plaintiffs' employers within the meaning of NYLL §§ 2 and 651.

91. Plaintiffs meet the prerequisites to bringing this action on behalf of the NYLL class under FRCP 23 because:

   a. Numerosity: upon information and belief, the NYLL class is so numerous that the joinder of all members is impracticable. While the exact number of class members is unknown, and can only be obtained through discovery, there are approximately more than 50 other members of the NYLL class who were affected by the Spice group's unlawful compensation policies;

   b. Commonality: there are questions of law and fact common to the NYLL class, including whether the Spice group violated the NYLL by refusing to pay the NYLL class members proper overtime hourly rates, whether defendants violated the NYLL minimum wage provisions, and whether defendants failed to pay NYLL class members spread of hours wages;

   c. Typicality: the plaintiffs' claims are typical of the NYLL class because plaintiffs and the NYLL class members were each underpaid as a result of the Spice group's unlawful compensation policies; and

   d. Adequacy: the plaintiffs will fairly and adequately protect the interests of the NYLL class because they have no interests that are antagonistic to, or in conflict with, the interests of the NYLL class as a whole, and the plaintiffs have engaged competent counsel to ensure protection of the interests of the NYLL class as a whole.

92. This action is suited for class certification under FRCP 23(b)(3) because questions of law and fact common to members of the class predominate over any questions affecting only individual members, such as:

   a. Did defendants have a policy or practice of not paying the NYLL class legally-required overtime rates;

   b. Did defendants have a policy or practice of not paying plaintiffs and the NYLL class for all hours actually worked;

   c. Did defendants fail to pay the NYLL class the applicable minimum hourly wages;

   d. Did defendants fail to pay the NYLL class spread of hours wages; and

  e. What were the common conditions of employment in the workplace, such as clock-in procedures, breaks, and any other policies or practices that affected whether the NYLL class was paid proper wages for the hours they actually worked.

93. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants, and the damages suffered by individual class members are small compared to the expense and burden of individual prosecution of this litigation.

94. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

95. By reason of the foregoing, plaintiffs have been damaged as follows:

  a. Castillo: approximately $77,237.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

  b. Perez: approximately $15,687.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

  c. Lopez: approximately $28,960.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

  d. A. Mendez: approximately $30,178.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

  e. Otilica: approximately $32,165.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

  f. De los Santos: approximately $35,520.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

  g. Morales: approximately $37,889.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

  h. E. Mendez: approximately $5,730.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

    i. Rosas: approximately $41,615.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

    j. M. Mendez: approximately $13,710.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

    k. The costs of this litigation, including attorney's fees; and

    l. Such other and further relief as this Court deems just and equitable.

96. Each of the other NYLL class members has been damaged in an amount to be determined at trial.

## FOURTH CLAIM
### (violation of New York Labor Law minimum wage provisions)
### (on behalf of all plaintiffs except Alejandro Otilica Luna)

97. Plaintiffs repeat and re-allege paragraphs 1 through 65 and 87 as though fully set forth herein.

98. Plaintiffs sue on their own behalf and on behalf of the NYLL class.

99. Defendants willfully failed to pay plaintiffs at the applicable minimum hourly rate, in violation of NYLL § 650, *et seq.*

100. Defendants' failure to pay plaintiffs at the applicable minimum hourly rate was willful within the meaning of NYLL § 663.

101. By reason of the foregoing, plaintiffs have been damaged as follows:

    a. Castillo: approximately $42,303.00 of unpaid minimum wages, plus interest;

    b. Perez: approximately $8,016.00 of unpaid minimum wages, plus interest;

    c. Lopez: approximately $22,790.00 of unpaid minimum wages, plus interest;

    d. A. Mendez: approximately $13,661.00 of unpaid minimum wages, plus interest;

    e. Otilica: approximately $19,335.00 of unpaid minimum wages, plus interest;

    f. De los Santos: approximately $20,890.00 of unpaid minimum wages, plus interest;

  g. Morales: approximately $22,256.00 of unpaid minimum wages, plus interest;

  h. E. Mendez: approximately $3,945.00 of unpaid minimum wages, plus interest;

  i. Rosas: approximately $35,975.00 of unpaid minimum wages, plus interest;

  j. M. Mendez: approximately $8,692.00 of unpaid minimum wages, plus interest;

  k. The costs of this litigation, including attorney's fees; and

  l. Such other and further relief as this Court deems just and equitable.

102. Each of the other NYLL class members has been damaged in an amount to be determined at trial.

## FIFTH CLAIM
### (violation of New York Commissioner of Labor's spread of hours wage order)

103. Plaintiffs repeat and re-allege paragraphs 1 through 65 and 87 as though fully set forth herein.

104. Plaintiffs sue on their own behalf and on behalf of the NYLL class.

105. Plaintiff Alejandro Otilica Luna ("Luna") is a resident of Queens County, New York.

106. Luna worked as a dishwasher and as a cook at the Spice group restaurant location at 75 Second Avenue in Manhattan from October 2001 until April 2003.

107. Plaintiffs worked more than ten hours each day during their respective periods of employment with the Spice group.

108. Defendants failed to pay plaintiffs one additional hours pay at the basic minimum wage rate before allowances for each day plaintiffs' spread of hours exceeded ten, in violation of the wage order of the New York Commissioner of Labor, codified at N.Y. COMP. CODES R. & REGS. tit. 12, §§ 137-1.7, and 137-3.11.

109. Defendants' failure to pay plaintiffs spread of hours wages was willful within the meaning of NYLL § 663.

110. By reason of the foregoing, plaintiffs have been damaged as follows:

   a. Castillo: approximately $8,798.00 in unpaid spread of hours wages, plus interest;

   b. Perez: approximately $1,604.00 in unpaid spread of hours wages, plus interest;

   c. Lopez: approximately $6,789.00 in unpaid spread of hours wages, plus interest;

   d. A. Mendez: approximately $3,460.00 in unpaid spread of hours wages, plus interest;

   e. Otilica: approximately $803.00 in unpaid spread of hours wages, plus interest;

   f. De los Santos: approximately $4,975.00 in unpaid spread of hours wages, plus interest;

   g. Morales: approximately $5,288.00 in unpaid spread of hours wages, plus interest;

   h. E. Mendez: approximately $1,031.00 in unpaid spread of hours wages, plus interest;

   i. Rosas: approximately $9,473.00 in unpaid spread of hours wages, plus interest;

   j. M. Mendez: approximately $2,533.00 in unpaid spread of hours wages, plus interest;

   k. Luna: approximately $2,935 in unpaid spread of hours wages, plus interest;

   l. The costs of this litigation, including attorney's fees; and

   m. Such other and further relief as this Court deems just and equitable.

111. Each of the other NYLL class members has been damaged in an amount to be determined at trial.

## SIXTH CLAIM
### (violation of NYLL overtime provisions)
### (on behalf of plaintiff Luna)

112. Luna repeats and re-alleges paragraphs 1 through 65, paragraph 87 and paragraphs 105 through 109 as though fully set forth herein.

113. Luna worked approximately 60 hours per week at the SEA restaurant located at 75 Second Avenue in Manhattan.

114. Luna was paid a weekly salary of $360.

115. By reason of the foregoing, Luna has been damaged as follows:

   a. Approximately $5,700.00 of unpaid overtime premiums and unpaid overtime wages;

   b. The costs of this litigation, including attorneys' fees; and

   c. Such other and further relief as this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court certify this action as a collective action under the FLSA and issue the corresponding notice of the collective action; certify this action as a class action under FRCP 23 for all applicable claims under the NYLL; and awarding plaintiffs the relief set forth in paragraphs 77, 78, 83, 84, 95, 96, 101, 102, 110, 111 and 115 above.

July 30, 2008

| | |
|---|---|
| MICHAEL A. FAILLACE<br>MICHAEL FAILLACE & ASSOCIATES, P.C.<br>110 East 59th Street, 32nd Floor<br>New York, NY 10022<br>(212) 317-1200 | /s/<br>PETER G. EIKENBERRY (7257)<br>74 Trinity Place, Suite 1609<br>New York, New York 10006<br>(212) 385-1050 |

*Attorneys for Plaintiffs*